Theresa Bowen Hatch (259631)
BOWEN HATCH LAW, PC
1902 Wright Place, Suite 200
Carlsbad, CA 92008
Telephone: 760-539-7603
Fax: 760-539-9966
Theresa@bowenhatchlaw.com

Attorneys for Plaintiff Simon Freeman

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| SIMON FREEMAN,<br><br>Plaintiff,<br><br>v.<br><br>JAMES ENGLEMAN, Warden of METROPOLITAN DETENTION CENTER, LOS ANGELES, in his individual capacity; CHARLES PARK, Regional Medical Director and/or Facility Health Service Administrator of METROPOLITAN DETENTION: CENTER, LOS ANGELES, in his individual capacity; DOE #1; DOE #2; THE UNITED STATES OF AMERICA; and INTEGRATED MEDICAL SOLUTIONS, LLC<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL |

Plaintiff offers this Complaint for Damages and Jury Demand against the Defendants for permanent injuries that arose from medical neglect while Plaintiff

was incarcerated and in the care and charge of the Defendants.

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1346(b)(1), and 1367. Plaintiff brings this action under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), for violation of the Eighth Amendment to the United States Constitution, and under the Federal Tort Claims Act and California law.

2. The jurisdiction of this Court over the subject matter of this claim is predicated on Title 28 of the United States Code §§ 1131, 1343, and 1346(b).

3. Plaintiff also brings claims arising under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671, *et seq.*, and California state law. Thus, this Court further has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b) in that this is a claim against the Defendant UNITED STATES OF AMERICA for money damages, accruing on or after January 1, 1945, for personal injury caused by the negligent and wrongful acts and omissions of employees of the Government while acting within the course and scope of their office or employment under the circumstances where the Defendant, if a private person, would be liable to the Plaintiff.

4. The FTCA has an administrative exhaustion requirement under which a claimant, before filing suit, must file an administrative claim with the appropriate federal agency. If that agency does not finally dispose of the administrative claim

within six months, then the claimant is deemed to have exhausted their remedies per 28 U.S.C. § 2675(a).

5. Plaintiff timely presented an Administrative Claim to the Federal Bureau of Prisons pursuant to 28 U.S.C. § 2675(a). The claim was sent on July 24, 2025, and delivered on July 29, 2025 (FedEx tracking no. 883030168320). The Standard Form 95 is attached and incorporated as **Exhibit A**.

6. The Federal Bureau of Prisons failed to issue a final disposition within six months, and Plaintiff has elected to deem that failure a final denial of the claim under 28 U.S.C. § 2675(a). Plaintiff has therefore exhausted all available administrative remedies.

7. This Court has federal question jurisdiction over Plaintiff's constitutional claims under 28 U.S.C. § 1331.

8. This Court has subject matter jurisdiction over Plaintiff's FTCA claims under 28 U.S.C. § 1346(b)(1).

9. To the extent that this Complaint relies upon California state tort law, this Court has jurisdiction over such claims under 28 U.S.C. § 1367 because they are substantially related to Plaintiff's federal claims and arise out of the same case or controversy.

10. This Court also has personal jurisdiction over the individual Defendants. The Court has general jurisdiction over each of the individual Defendants because each is a citizen of—and domiciled in—California or was so domiciled when this action

commenced. This Court also has specific jurisdiction over each Defendant because the actions and omissions that form the basis of the claims were committed in California.

11. This Court has specific personal jurisdiction over Defendant INTEGRATED MEDICAL SOLUTIONS, LLC because it purposefully directed its activities at California by contracting to provide, and providing, medical services to inmates at MDCLA in Los Angeles, California, and Plaintiff's claims against it arise out of those activities.

12. Venue is proper in the Central District of California under 28 U.S.C. §§ 1391(b) and 1402(b) because the acts and omissions that form the basis of Plaintiff's claims occurred in the City of Los Angeles, County of Los Angeles, California.

## II. PARTIES

13. Plaintiff SIMON FREEMAN ("Mr. Freeman") is and was, at all relevant times, a resident of California.

14. Defendant JAMES ENGLEMAN ("Warden Engleman") was, at all relevant times, employed as the Warden of METROPOLITAN DETENTION CENTER, LOS ANGELES ("MDCLA") and was acting within the course and scope of that employment. At all relevant times, Warden Engleman was acting as a law enforcement officer and under color of law of the United States government. Warden Engleman is sued in his individual capacity.

15. Defendant CHARLES PARK was, at all relevant times, employed as the

Regional Medical Director and/or Facility Health Service Administrator at MDCLA and was acting within the course and scope of his employment. At all relevant times, PARK was acting under color of federal law. PARK is sued in his individual capacity.

16. DOE #1 is an as-yet-unidentified prison guard working as an employee, agent, or servant of the MDCLA and acting under the color of federal law and within the course and scope of that employment, agency, or service at all material times. DOE #1 is sued in their individual capacity.

17. DOE #2 is an as-yet-unidentified nurse who worked "pill call" on the midday pill call on November 20, 2024. This nurse worked as an employee, agent, or servant of the MDCLA and was acting under the color of federal law and within the course and scope of that employment, agency, or service at all material times. DOE #2 is sued in their individual capacity.

18. Defendant UNITED STATES OF AMERICA (the "UNITED STATES") is a sovereign entity and responsible for the proper administration, actions, and omissions of its employees, agents, agencies, and institutions, including the Federal Bureau of Prisons (and its employees and agents) and MDCLA. Defendant UNITED STATES is responsible for the custody and care of sentenced federal inmates and is charged with the management and regulation of all federal penal and correctional institutions including MDCLA.

19. Defendant INTEGRATED MEDICAL SOLUTIONS, LLC ("IMS") is a limited liability company with its principal place of business at 1485 Heritage

Parkway, Mansfield, Texas 76063. Upon information and belief, at all relevant times IMS held a contract with the Federal Bureau of Prisons to provide medical services to inmates at MDCLA and employed, contracted with, or furnished health care personnel who provided medical services to inmates at MDCLA.

20. In the alternative to the allegation that DOE #2 was an employee of the UNITED STATES, and upon information and belief, DOE #2 was an employee or agent of IMS who was acting within the course and scope of that employment or agency at all material times. To that extent, DOE #2 is sued under California law.

21. At all relevant times, each Defendant was an integral participant in the events described below and was jointly engaged in activity resulting in the deprivation of Plaintiff's constitutional and legal rights.

22. At all relevant times, each Defendant's conduct was governed by federal laws, regulations, and policies.

## III. STATEMENT OF FACTS

23. On or about November 20, 2024, Mr. Freeman was an inmate at MDCLA.

24. On or about November 20, 2024, Mr. Freeman awoke around 3 a.m. with a penile erection. He attempted to relieve himself twice with no success. He tried again at 8 a.m. in the shower, but was unsuccessful.

25. At that point, he approached the housing officer, DOE #1, and explained the situation of his persistent erection of approximately six hours' duration.

26. He was experiencing priapism, a medical emergency that requires swift

intervention.

27. Mr. Freeman told the officer he was in severe pain.

28. DOE #1 laughed at Mr. Freeman and advised him to wait until "pill call comes up."

29. Pill call came around noon (9 hours into the event), and Mr. Freeman immediately informed the pill call nurse, DOE #2, of his situation.

30. The pill call nurse stated that they would inform medical, but they told him that the situation would correct itself "soon."

31. By the time 6 p.m. evening pill call came around, the situation had not resolved itself without medical attention, and no one had come to check on Mr. Freeman or follow up on his complaints.

32. At this point, Mr. Freeman had been experiencing symptoms and pain for approximately 15 hours.

33. He reported his continuing symptoms, and a staff member took his name down, but no one took any further action in terms of examination or treatment.

34. By the following morning, November 21, 2024, Mr. Freeman had still received no evaluation or treatment.

35. When the morning pill call came around again, he again informed the staff that his painful erection had not resolved or abated.

36. This time, a male medical staff person personally examined the erection and stated it did not look good from a medical perspective.

37. Only at that point was transport to an outside medical facility arranged.

38. After 36 hours of symptoms, he was examined at White Memorial Hospital, where they attempted to aspirate the priapism for 1.5 hours without success.

39. He was diagnosed with refractory priapism, a painful erection that fails to resolve after standard treatments like blood aspiration or injections. It is a medical emergency, and delaying intervention risks permanent tissue necrosis and erectile dysfunction.

40. He was transferred to Riverside Community Hospital, where they again attempted to aspirate the priapism for 1.5 hours without success.

41. A shunt was placed, but the priapism persisted.

42. He required immediate surgery and monitoring for several days, and was told that he might need a second surgery.

43. His symptoms did not improve in the four days after the surgery. He was still experiencing pain when urinating. His penis remained erect, bruised, and tender.

44. He underwent a second procedure, but he suffered permanent erectile dysfunction.

45. Federal inmates who require specialized medical care, including Mr. Freeman, depend on MDCLA to provide necessary medical care for their medical conditions including but not limited to evaluation and treatment by appropriate and qualified health care providers, physicians, experts, hospitals, and clinics.

46. As Warden of MDCLA, JAMES ENGLEMAN (“Warden Engleman”) had a

duty to ensure that inmates, including Mr. Freeman, received adequate medical care. Warden Engleman also had a duty to provide for humane conditions of confinement and take reasonable measures to guarantee the safety of inmates, including Mr. Freeman.

47. At all relevant times, CHARLES PARK provided administrative supervision and direction to all Health Services Department ("HSD") staff as Regional Medical Director and/or Facility Health Service Administrator at MDCLA.

48. CHARLES PARK had a duty to ensure that inmates, including Mr. Freeman, received adequate medical care.

49. CHARLES PARK was personally aware of Mr. Freeman's serious medical condition through his role as an administrative supervisor and director over the HSD and the medical examination and evaluation protocols for incoming transfers.

50. Such role authorized him to make administrative arrangements and transport Mr. Freeman to an appropriate facility for necessary medical care if care within the confines of MDCLA was inadequate to meet Mr. Freeman's medical needs.

51. As Warden and as Medical Director of MDCLA, Warden Engleman and Charles Park were familiar with healthcare and treatment options available (and unavailable) at MDCLA for inmates with chronic or emergency medical conditions. DOES #1 and #2 were also familiar with healthcare and treatment options available (and unavailable) at MDCLA for inmates with chronic or emergency medical conditions.

52. At all relevant times herein, Warden Engleman, Charles Park, and DOES #1 and #2 were authorized and required to provide reasonable and necessary medical care and treatment, including diagnostic testing, evaluation, monitoring, referral to specialists, nursing care, medical intervention, surgical procedures, as well as accommodations and transportation to appropriate medical facilities for Mr. Freeman's health needs.

53. Mr. Freeman was ultimately diagnosed with recalcitrant ischemic priapism. The resulting damage is permanent: Mr. Freeman has required a penile implant and can no longer achieve an erection without inflating the implant.

54. At all relevant times herein, Warden Engleman, Charles Park, and DOES #1 and #2 withheld necessary medical care from Mr. Freeman, including diagnostic testing, evaluation, monitoring, referral to specialists, nursing care, medical intervention, surgical procedures, and accommodations and transportation to appropriate medical facilities.

55. At all relevant times herein, MDCLA did not have medical facilities on site to adequately accommodate Mr. Freeman's serious medical condition.

56. At all relevant times, Warden Engleman, Charles Park, and DOES #1 and #2 failed to make arrangements and transport Mr. Freeman to a tertiary center to receive monitoring, evaluation, assessment, testing, referral services and medications despite learning of his serious medical condition.

57. Warden Engleman, Charles Park, and DOES #1 and #2 refused to

accommodate Mr. Freeman's serious medical need despite the known risk of serious medical complications.

58. Despite his frequent and consistent complaints, at all relevant times, in deliberate disregard of a known risk of harm, each and every Defendant withheld or failed to provide Mr. Freeman with timely and urgent medical care for his serious medical condition.

59. As a direct, legal, and proximate result of Defendants' acts and omissions alleged herein, Plaintiff has suffered permanent injury.

60. As a direct, legal, and proximate result of Defendants' acts and omissions alleged herein, Plaintiff has sustained special and economic damages, including past and future medical expenses.

61. As a direct, legal, and proximate result of Defendants' acts and omissions alleged herein, Plaintiff seeks all damages and remedies allowable pursuant to the decisional authority of federal civil rights law and California state law.

62. Plaintiff has engaged counsel to vindicate his rights and is entitled to recover all attorneys' fees incurred in relation to this action pursuant to relevant federal and state laws.

63. Defendants acted with fraud, oppression, and/or malice, which justifies the imposition of punitive and exemplary damages.

## IV. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(<u>Bivens</u> Claim Against Defendants Engleman, Park, DOE #1, and DOE #2 for Violation of Plaintiff's Eighth Amendment Rights Against Deliberate Indifference to a Serious Medical Condition)**

64. Plaintiff incorporates by reference all of the Statement of Facts allegations.

65. Under the Eighth Amendment of the United States Constitution, Mr. Freeman had a right to be free from cruel and unusual punishment, including the right to receive adequate medical care.

66. At all material times, the individual Defendants have been federal employees of the BOP, acting under the color of federal authority with respect to the allegations in this complaint.

67. The painful erection experienced by Mr. Freeman constituted a serious medical condition.

68. The individual Defendants had knowledge of those serious medical needs.

69. The individual Defendants knowingly disregarded an excessive risk to Mr. Freeman's health when they disregarded his medical complaints and requests for treatment of his serious medical condition by failing to provide him appropriate medical care.

70. At all relevant times herein mentioned, Mr. Freeman's serious medical condition placed him at risk for serious medical complications if he was deprived of timely and appropriate medical monitoring, evaluation, assessment, testing, referral to specialists, surgery, and medications.

71. At all material times, the individual Defendants each had an obligation to

provide appropriate medical monitoring, evaluation, assessment, testing, referral to specialists, and medications to prevent serious and permanent injury.

72. At all times herein mentioned, the individual Defendants each were deliberately indifferent to Mr. Freeman's risk of serious and permanent complications associated with his serious medical condition.

73. Each individual Defendant failed to provide appropriate medical monitoring, evaluation, assessment, testing, referral to specialists, and medications.

74. As a direct and proximate cause of the individual Defendants' acts and omissions, constituting violation of the Eighth Amendment, Mr. Freeman was caused to suffer unnecessary medical complications that are permanent and continuing in nature.

75. The individual Defendants acted willfully, wantonly, maliciously, oppressively, and with conscious, reckless disregard and deliberate indifference for Mr. Freeman's rights, justifying the imposition of punitive or exemplary damages.

WHEREFORE, Plaintiff prays for relief as set forth in the Request for Relief at the conclusion of the pleading.

**SECOND CAUSE OF ACTION**
**(FTCA and California Common Law Claim For Negligence Against the UNITED STATES)**

76. Plaintiff incorporates by reference all of the Statement of Facts allegations.

77. Defendant UNITED STATES' treatment of Mr. Freeman during his incarceration at MDCLA violated California common law and the Federal Tort

Claims Act under 28 U.S.C. § 2671, *et seq.* for negligence of the UNITED STATES and its employees, agents, and servants.

78. As his jailer, the government had a special and heightened duty of care to protect Mr. Freeman from reasonably foreseeable harm.

79. Federal law, which requires the BOP to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States," confirms this heightened duty of care. 18 U.S.C. § 4042(a)(2).

80. BOP policy does as well. According to the Metropolitan Detention Center Los Angeles Admission & Orientation Handbook, the FBOP's "healthcare mission" is "to provide essential medical and dental services to inmates." Handbook at 22 (https://www.bop.gov/locations/institutions/los/los_ao-handbook.pdf?v=1.0.0) (link last visited 11/10/26). "All inmates have access to MDC Los Angeles health care services." Id. at 23. The Handbook informs inmates: "You have the right to healthcare…." Id. at 4.

81. At all times herein mentioned, the UNITED STATES had a duty to provide for the safekeeping and care of inmates, including Mr. Freeman. However, the UNITED STATES systematically, willfully, recklessly, maliciously, deliberately, and/or negligently denied Mr. Freeman timely access to necessary medical treatment despite numerous pleas for medical assistance.

82. The denial of care was continual and systematic, and it lacked any penological justification.

83. Additionally, the denial of care was done for the personal amusement of guards and other staff at MDCLA due to the nature of the medical condition involving a penile erection.

84. Defendants acted with malice and oppression, and their conduct constitutes a reckless or callous disregard for Mr. Freeman's rights.

85. The UNITED STATES and its employees, agents, and servants were negligent and careless in the diagnostic testing, evaluation, monitoring, referral to specialists, nursing care, medical intervention, surgical procedures of Mr. Freeman.

86. The employees, agents, and/or servants of the UNITED STATES were negligent and careless in failing to timely make accommodations and arrange transportation to appropriate medical facilities for Mr. Freeman during his serious medical event.

87. Had Mr. Freeman received adequate diagnostic testing, evaluation, monitoring, referral to specialists, nursing care, medical intervention, surgical procedures, as well as accommodations and transportations to appropriate medical facilities, he would not have suffered the serious permanent injuries that are irreversible.

88. As a direct and proximate cause of the UNITED STATES' negligence and carelessness, Mr. Freeman suffered permanent and irreversible damage to his penis.

89. As a direct and proximate cause of the UNITED STATES' acts and omissions alleged herein, Plaintiff suffered significant economic and noneconomic damages,

including, but not limited to, past and future medical expenses, loss of meaningful urinary and sexual function, and extreme humiliation and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for relief as hereinabove and hereinafter set forth.

**THIRD CAUSE OF ACTION**
**(FTCA and California Common Law Claim For Intentional Infliction of Emotional Distress Against the UNITED STATES)**

90. Plaintiff incorporates by reference all of the Statement of Facts allegations.

91. Mr. Freeman brings this claim for intentional infliction of emotional distress under California common law against Defendant UNITED STATES for the conduct of its employees and agents at the BOP, including the MDCLA.

92. The government, through its agents at the BOP, including the MDCLA, engaged in outrageous conduct directed at Mr. Freeman by failing to provide him with necessary medical care that resulted in permanent loss of effective penile function. This conduct was so extreme as to exceed all bounds of decency in a civilized community.

93. The government through its agents at the BOP, including the MDCLA, intended to cause Mr. Freeman severe emotional distress because they knew that emotional distress was substantially certain to result from their actions, including the total medical neglect of Mr. Freeman as he begged for medical assistance. At a minimum, the government acted with reckless disregard to the substantial probability that its actions would cause Mr. Freeman severe emotional distress.

94. In particular, laughing at Mr. Freeman's distress and ignoring his pleas for help for 36 hours was intended to—and did—cause both severe physical and emotional harm.

95. The government's outrageous conduct caused Mr. Freeman to suffer, and continue to suffer, severe emotional distress, including fear, anxiety, depression, and loss of enjoyment of life. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

96. The agents and employees of the UNITED STATES at the MDCLA acted with malice and oppression, and their conduct constitutes a reckless or callous disregard for Mr. Freeman's rights.

**FOURTH CAUSE OF ACTION**
**(FTCA and California Common Law Claim For Negligent Infliction of Emotional Distress Against the UNITED STATES)**

97. Plaintiff incorporates by reference all of the Statement of Facts allegations.

98. Mr. Freeman brings this claim for negligent infliction of emotional distress under California common law against Defendant United States for the conduct of its employees and agents at the BOP, including MDCLA.

99. The government had a special and heightened duty of care to Mr. Freeman as his jailer. This heightened duty of care required the BOP and its officials to protect Mr. Freeman from reasonably foreseeable harm.

100. Federal law, which requires the BOP to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the

United States," confirms this heightened duty of care. 18 U.S.C. § 4042(a)(2).

101. Alternatively, the government and its agents at the BOP, including MDCLA, had a general duty of care with respect to Mr. Freeman.

102. The government through its agents at the BOP, including MDCLA, engaged in negligent conduct, breached their duty of care to Mr. Freeman, and willfully violated statutory standards by failing to provide him with necessary medical care.

103. In particular, laughing at Mr. Freeman's distress and ignoring his pleas for help for 36 hours was intended to—and did—cause both severe physical and emotional harm.

104. By failing to provide Mr. Freeman with necessary and urgent or emergency medical care, the government through its agents at the BOP, including MDCLA, proximately caused Mr. Freeman to suffer severe emotional distress, including anxiety, depression, and insomnia, as well as injuries to his personal dignity.

105. Mr. Freeman's emotional reactions are not an abnormal response to his medical neglect. A reasonable person would be unable to cope with the mental distress caused by being medically neglected at the cost of all future normal sexual function for the rest of his life.

106. No reasonable person in a civilized society should be expected to endure that kind of mental distress.

107. The agents and employees of the UNITED STATES at MDCLA acted with malice and oppression, and their conduct constitutes a reckless or callous disregard

for Mr. Freeman's rights.

108. Mr. Freeman seeks the following relief for his injuries: (a) nominal damages resulting from the violation of Mr. Freeman's personal dignity and from physical injury; and (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to his personal dignity.

**FIFTH CAUSE OF ACTION**
**(Alternative California Common Law Claim for Professional Negligence Against DOE #2 and IMS)**

109. Plaintiff incorporates by reference all of the Statement of Facts allegations.

110. This cause of action is pleaded in the alternative under Federal Rule of Civil Procedure 8(d)(2) and (3). It applies if, and to the extent that, DOE #2 is determined not to have been an employee of the UNITED STATES acting within the scope of federal employment, such that Plaintiff's claims arising from the conduct of DOE #2 are not cognizable against the UNITED STATES under the FTCA.

111. Upon information and belief, DOE #2 was a nurse employed by, or acting as an agent of, IMS when DOE #2 worked the midday pill call at MDCLA on November 20, 2024, and received Mr. Freeman's report of a painful erection that had then persisted for approximately nine hours.

112. DOE #2 owed Mr. Freeman a duty to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful nurses would use in the same or similar circumstances.

113. DOE #2 breached that duty by, among other things: (a) failing to recognize that a painful erection lasting approximately nine hours was a medical emergency requiring immediate evaluation; (b) telling Mr. Freeman that the condition would correct itself "soon" without any proper medical basis; (c) failing to obtain immediate evaluation by a physician or immediate transport to a hospital; and (d) failing to follow up on, document, or escalate Mr. Freeman's complaints.

114. IMS is vicariously liable for the negligence of DOE #2 because DOE #2 was acting within the course and scope of employment or agency with IMS.

115. IMS was also directly negligent. Upon information and belief, IMS owed inmates at MDCLA, including Mr. Freeman, a duty to use reasonable care in hiring, training, supervising, and staffing the health care personnel it furnished, and in maintaining protocols for recognizing and escalating medical emergencies. IMS breached that duty by failing to train and supervise its personnel to recognize priapism as a medical emergency and to escalate it for immediate treatment.

116. As a direct and proximate result of the negligence of DOE #2 and IMS, Mr. Freeman's priapism went untreated for more than a day, causing permanent erectile dysfunction and the need for a penile implant, and Mr. Freeman has suffered and will continue to suffer economic and noneconomic damages, including physical pain, mental suffering, emotional distress, and loss of enjoyment of life.

117. This claim is timely. When it accrued on or about November 20, 2024, Mr. Freeman was imprisoned on a criminal charge, or in execution under the sentence of

a criminal court for a term less than for life, and he has remained continuously imprisoned since. The limitations period is therefore tolled under California Code of Civil Procedure § 352.1.

118. Plaintiff does not seek punitive damages on this cause of action.

WHEREFORE, Plaintiff prays for relief as set forth in the Request for Relief at the conclusion of the pleading.

## V. REQUEST FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court award the following relief, jointly and severally to the extent permitted by law:

1. Compensatory damages and other special damages according to proof;

2. General damages according to proof;

3. Punitive damages according to proof against Defendants Engleman, Park, DOE #1, and DOE #2 on the First Cause of Action only;

4. Prejudgment interest at the legal rate according to proof against all Defendants other than the UNITED STATES;

5. Costs of suit;

6. Other relief as the Court deems proper.

///

///

///

///

## VI. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims and issues so triable, including the Bivens claim against Defendants Engleman, Park, DOE #1, and DOE #2 and the Fifth Cause of Action against DOE #2 and IMS.

Dated: November 13, 2026

**BOWEN HATCH LAW, PC**

By: */s Theresa Bowen Hatch*
Theresa Bowen Hatch (259631)
Theresa@bowenhatchlaw.com

Attorneys for Plaintiff Simon Freeman

# EXHIBIT A

# CLAIM FOR DAMAGE, INJURY, OR DEATH

**INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED
OMB NO. 1105-0008

1. Submit to Appropriate Federal Agency:

Federal Bureau of Prisons
Western Regional Office
7338 Shoreline Drive
Stockton, CA 95219

2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code.

Simon Freeman Home address:
13210 Victory Blvd, Apt 1
Van Nuys, CA 91401

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | 08/02/1967 | Married | 11/20/2024 Wednesday | 0300 AM |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

While incarcerated at the Metropolitan Detention Center, Los Angeles, Mr. Freeman awoke around 3 am with an erection. He attempted to relieve himself twice with no success. He tried again at 8 am in the shower, but was unsuccessful. Thus, he approached the housing officer and explained the situation of his persisting erection of 6 hours duration. He advised the officer he was in severe pain. He was laughed at and advised to wait until "pill call comes up." Pill call came up around noon and Mr. Freeman advised the nurse of his situation. (continued on attached paper)

9. **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

N/A

10. **PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Mr. Freeman suffered a prolonged erection, and was medically diagnosed with recalcitrant ischemic priapism, which has resulted in permanent damage to his penis requiring a penile implant.

11. **WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| | |

12. (See instructions on reverse). **AMOUNT OF CLAIM** (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 0.00 | 400,000,000 | 0.00 | 400,000,000 |

**I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.**

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| [signature] Attorney for Simon Freeman | 866-790-9419 | 7/22/2025 |

**CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM**

The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729).

**CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS**

Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.)

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? ☐ Yes If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No

17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance? ☐ Yes If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.
B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

U.S Department of Justice

# Certification of Identity

FORM APPROVED OMB NO. 1103-0016
EXPIRES 04/30/27

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The primary purpose for the collection of the information on this form is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. The authority by which information is collected on this form is 5 U.S.C. § 552 and 5 U.S.C. § 552a(a), as well as 28 CFR Section 16.41(d). Any information you provide may also be disclosed pursuant to a "routine use" under the Privacy Act of 1974, 5 U.S.C. § 552a, listed in a DOJ System of Records Notice, which may include: JUSTICE/DOJ-004 Freedom of Information Act, Privacy Act, and Mandatory Declassification Review Records (CMS) for the Department of Justice, available at https://www.justice.gov/opcl/doj-systems-records#DOJ. Your disclosure of information to the Department of Justice on this form is voluntary. If you do not complete all or some information fields in this form, however, the Department of Justice may not be able to effectively respond to your request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. § 1001 and/or 5 U.S.C. § 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1] Simon Freeman

Citizenship Status [2] US Citizen   Social Security Number [3] 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

Current Address: 13210 Victory Blvd, Apt 1, Van Nuys, CA 91401 (home address) currently at Metropolitan Detention Center PO Box 531500 Los Angeles, CA 90053

Date of Birth : 08/02/1967   Place of Birth: Los Angeles, CA

**OPTIONAL: Authorization to Release Information to Another Person**

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

**Print or Type Name**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature**[4] [signature] Attorney of Counsel for Simon Freeman **Date** 7/22/2025

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

Basis of claim continued from Form 95.

She replied she would notify medical but the situation would correct itself "soon". His condition continued and "pill call" came back in the evening. At around 6 pm "pill call" returned to the unit and he advised the staff of his continued condition. This staff person took his name down but nothing else happened. Mr. Freeman continued to be in pain. On 11/21/2024, in the am "pill call" he again notified the staff of his continued painful erection but was ignored. At the evening "pill call" he again informed the medical staff of his continued painful erection. This time a male medical person looked at his erection, noted it "did not look good." This male staff spoke with medical and he was eventually transferred to an outside medical facility for evaluation and treatment.

Attorney for Simon Freeman.

7/22/2025